IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) No. 05 CR 655
v. )
)
KEITH PEARSON )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 19, 2005, a federal grand jury returned a three-count indictment charging Keith Pearson with manufacturing videos of children engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a). Defendant has moved to dismiss the indictment as an unconstitutional application of Section 2251(a) to what he deems "purely intrastate conduct." For the reasons below, the Court denies Defendant's motion to dismiss.

### BACKGROUND

In the course of conducting a search of Mr. Pearson's residence, police officers discovered VHS tapes containing images of children engaged in sexually explicit conduct. (R. 41-1 at 1.)[1] As a result of this discovery, a grand jury returned an indictment charging Pearson with three violations of Section 2251(a). (R. 35-1 at 1.) Specifically, the indictment alleges that Pearson employed, used, persuaded, induced and enticed a minor under the age of eighteen to engage in sexually explicit conduct for the purposes of producing visual depictions of such conduct. (*Id*. at 1-2.) The indictment does not allege that Pearson intended to introduce these

---

[1] The facts are taken from the parties' statement of the facts; there are no identifiable factual disputes at issue in this motion.

particular tapes into the stream of intrastate or interstate commerce. (*Id*. at 2.)

## ANALYSIS

**I.      Standard of Review**

Fed. R. Crim. P. 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). When considering a motion to dismiss under Rule 12(b)(2), a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). When viewed in the light most favorable to the government, an indictment is sufficient if it satisfies three, constitutionally mandated, requirements. *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). First, the indictment "must adequately state all of the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, the indictment must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *Id*. (citing *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). In this regard, indictments "need not exhaustively recount the facts surrounding the crime's commission," *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997), rather "when determining the sufficiency of an indictment, [a court] look[s] at the contents of the subject indictment 'on a practical basis and in [its] entirety, rather than in a hypertechnical manner.'" *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (quoting *Smith*, 230 F.3d at 305). In addition, "[a]n indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Black,* 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006); *United States v. Labs*

*of Virginia, Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003).

## II.     Defendant Pearson's Motion to Dismiss

Defendant has lodged an "as applied" challenge to the constitutionality of Section 2251(a). Pearson does not challenge Congress's power to criminalize the production of visual depictions of sexually explicit conduct involving minors if those visual depictions will be transported in interstate commerce or mailed. Rather, Pearson contends that the Court cannot constitutionally apply Section 2251(a) in this case because his conduct was "non-commercial, non-economic individual conduct that is purely intrastate in nature" and "there is no reasonable basis for concluding that the conduct had or was intended to have any significant interstate connection or any substantive effect on interstate commerce." (R. 35-1 at 2.)

### A.     Commerce Clause Framework

Congress may regulate three categories relating to commerce: (1) the channels of interstate commerce ("category one"); (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce ("category two"); and (3) activities that must be regulated to make a regulation of interstate commerce effective ("category three"). *See, e.g., Raich v. Gonzalez*, 125 S. Ct. 2216 (2005) (citing *United States v. Morrison*, 429 U.S. 598, 608-609 (2000); *United States v. Lopez*, 514 U.S. 549, 558-59 (1995); *Hodel v. Virginia*, 452 U.S. 264, 276-77 (1981); *Perez v. United States*, 402 U.S. 146 (1971)). The first two categories are permitted by the Commerce Clause itself (Art. I, § 8, cl.3), *see Gibbons v. Ogden*, 9 Wheat. 1, 189-190 (1824), while the third category is permitted by the Necessary and Proper clause (Art. I, § 8, cl. 18). *See Raich*, 125 S. Ct. at 2215-16 (Necessary and Proper Clause extends "Congress's regulatory authority over intrastate activities that are not themselves part of interstate

commerce.").

In particular, the Necessary and Proper Clause extends Congressional authority into two areas beyond that specifically authorized by the Commerce Clause itself: (1) activity that must be regulated in order to ensure the effectiveness of a comprehensive scheme that regulates commercial activity, *see Raich*, 125 S. Ct. at 2206, and (2) commercial activity that, when aggregated, has a substantial effect on interstate commerce. *See id*. at 2205-2206. Congress needs only a rational basis for concluding that a regulation serves these purposes. *See id.* at 2208.

### B. Constitutionality of Section 2251(a)

Defendant argues that Section 2251(a) cannot be constitutionally applied to purely intrastate production of child pornography. The Seventh Circuit has previously upheld a similar provision – 18 U.S.C. § 2252(a)(4)(B) – from a similar Commerce Clause challenge. *See United States v. Angle*, 234 F.3d 326 (7th Cir. 2000). Sections 2252(a)(4)(B) and 2251(a) proscribe the related activities of possession and production of child pornography (respectively), and the two statutes contain almost identical jurisdictional language.[2] *See United States v. Selseth,* No. 03 CR 1043, 2004 WL 1385835, *8 (N.D. Ill. June 18, 2004). As such, *Angle* provides a proper starting point for the Court's Commerce Clause analysis of Section 2251(a). *See id.* ("[I]t would be utterly nonsensical for the Court to apply different commerce clause analyses to these two statutes.").

---

[2] Section 2252(a)(4)(B) criminalizes *possession* of child pornography "which was produced using materials which have been mailed or so shipped or transported, by any means including by computer." Section 2251(a) proscribes *production* of child pornography that was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means.

4

In holding that Section 2252(a)(4)(B) was within Congress's power as a category three regulation under the Commerce Clause, the *Angle* court first determined that Congress had established a comprehensive scheme to regulate interstate and foreign commerce in "child pornography." *Angle*, 234 F.3d at 336, 337 n.12, 338 ("We believe that § 2252(a)(4)(B), unlike the gun control law in *Lopez*, was 'an essential part of a larger regulation of economic activity . . . that arise[s] out of or [is] connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.'") (quoting *Lopez*, 514 U.S. at 561). The *Angle* court also determined that Congress had moved to criminalize intrastate possession of child pornography in order to "close a loophole in the original regulatory scheme which was being 'undercut by the child pornographers who continued to manufacture their own pornography interstate.'" *Id.* at 337 (quoting *Rodia*, 194 F.3d at 479). In other words, Congress was regulating intrastate commercial activity in order to ensure the effectiveness of its comprehensive scheme regulating interstate commercial activity.

*Angle*'s reasoning is equally applicable to Section 2251(a). If Congress could rationally find that regulation of intrastate ***possession*** of child pornography was a necessary element of regulating interstate commerce in child pornography, Congress could similarly believe that it must regulate purely intrastate ***production*** of child pornography to maximize the effectiveness of its comprehensive regulatory scheme.

Finally, the *Angle* court determined that Congress "could have had a rational basis for believing that the intrastate possession of child pornography has a substantial effect on interstate commerce; and, further, that the regulatory means chosen were 'reasonably adapted to the end permitted by the Constitution.'" *Id*. at 337 (quoting *Hodel*, 452 U.S. at 276). In doing so, the

5

court adopted the so-called "market theory" to explain Congress's rational basis for believing that intrastate possession of child pornography could have a substantial effect on interstate commerce. *Angle*, 234 F.3d at 337-338. The "market theory" explanation is as follows:

> Some pornographers manufacture, possess, and use child pornography exclusively within the boundaries of a state, and often only within the boundaries of their own property. It is unrealistic to think that those pornographers will be content with their own supply, hence they will likely wish to explore new or additional pornographic photographs of children. Many of those pornographers will look to the interstate market as a source of new material, whether through mail order catalogs or through the Internet. Therefore, the possession of 'homegrown' pornography may well stimulate a further interest in pornography that immediately or eventually animates demand for interstate pornography. It is also reasonable to believe the related proposition that discouraging the intrastate possession of pornography will cause some of these child pornographers to leave the realm of child pornography completely, which in turn will reduce the interstate demand for pornography.

*Id.* at 338 (citing approvingly to *United States v. Rodia*, 194 F.3d 465, 477 (3rd Cir. 1999)).

The "market theory" explanation is also equally applicable to Section 2251(a), as applied here. First, it is equally unrealistic to think that a person who makes his own pornography will be content with his own supply. Second, the pornography manufacturer will likely wish to explore new or additional child pornography in the interstate market or introduce his "home-grown" pornography into the market. Third, the manufacturing of intrastate child pornography may well stimulate a further interest in pornography that immediately or eventually animates demand for interstate pornography. Finally, it is also reasonable to believe that by discouraging intrastate production of pornography, Section 2251(a) will cause some pornographers to leave the realm of child pornography altogether, thereby reducing the interstate demand for child pornography.

Defendant argues that the Seventh Circuit's decision in *United States v. Shaffner*, 258 F.3d 675 (7th Cir. 2001), renders *Angle*'s reasoning inapplicable to Section 2251(a). Defendant

6

finds it significant that the *Shaffner* court failed to apply the market theory or to even mention *Angle* in affirming the district court's denial of a motion to dismiss a Section 2251(a) charge. Defendant's reliance on *Schaffner* is misplaced. In *Shaffner*, the photograph in question had actually moved across state lines and was therefore an instrument of interstate commerce over which Congress had direct authority under the Commerce Clause (*i.e.* under categories one and two). *Id*. at 683. Because the activity in question fell directly under categories one and two and not category three, *see id.* at 682 ("[category three] is not directly applicable"), *Shaffner's* failure to address the market theory has no bearing on the Court's category three analysis. *See Selseth*, 2004 WL 1385835, *8 ("*Schaffner*, unlike *Angle*, found that § 2251(a) qualified under categories one and two. [...] As a result, *Schaffner's* failure to apply 'market theory' to § 2251(a) is meaningless.").

The Supreme Court's decision in *Raich,* which was decided after *Angle*, confirms that Section 2251(a) can be constitutionally applied to purely intrastate conduct. *Raich* upheld a challenge to the Controlled Substances Act's ("CSA") application to purely intrastate cultivation and use of marijuana. *Raich*, 125 S. Ct. at 2201. The court upheld the CSA as a category three regulation – that is, as a regulation of economic activity which substantially affects interstate commerce. *Id.* at 2205. The *Raich* court determined that the Commerce Clause allows Congress "to prohibit the local cultivation and use of marijuana," *id.* at 2198, noting that "when a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id.* at 2206.

Although the Seventh Circuit has not addressed the issue, other Circuits have held that *Raich* confirms Congress's authority to prohibit the intrastate possession and production of child

7

pornography. *See United States v. Cramer*, 213 Fed. Appx. 138, 143 (3d Cir. 2007) ("[Seeing] no reason to disturb" its prior ruling "that Congress rationally could have believed that child pornography that did not itself travel in interstate commerce has a substantial effect on interstate commerce, and is thus subject to regulation under the Commerce Clause."); *United States v. Forrest*, 429 F.3d 73, 78 (4th Cir. 2005) (stating that *Raich* "makes it clear that no error resulted from applying § 2251(a) and § 2252A(a)(5)(B) to [defendant's] wholly intrastate production and possession of child pornography"); *United States v. Chambers*, 441 F.3d 438, 454-455 (6th Cir. 2006) (applying *Raich* analysis in rejecting argument that "the pornography was 'homegrown' and therefore outside of the grasp of federal power"); *United States v. Dunlap*, 180 Fed. Appx. 636 (8th Cir. 2006) (citing *Raich* and rejecting the defendant's as-applied challenge to Section 2251(a) where the child pornography images were not transported in interstate commerce, and noting that "homegrown child pornography enters the national market surreptitiously, feeds the national market, and stimulates demand for child pornography, demonstrating the intrastate production and possession of child pornography is an economic activity connected to interstate commerce") (internal quotations and citations omitted); *United States v. Grimmett*, 439 F.3d 1263, 1273 (10th Cir. 2006) ("The fact that [Mr. Grimmett] neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment...Congress' decision to deem illegal [Mr. Grimmett's] local production of child pornography represents a rational determination that such local activities constitute an essential part of the interstate market for child pornography that is well within Congress' power to regulate."); *United States v. Maxwell*, 446 F.3d 1210, 1219 (11th Cir. 2006) (reversing prior decision that had held Section 2252A(a)(5)(B) unconstitutional, and holding that "*Raich* makes clear that no error resulted from

applying §§ 2251(a) and 2252A(a)(5)(B) to [defendant's] wholly intrastate production and possession of child pornography") (internal quotations omitted)). As an analytical matter, Defendant Pearson's challenge to Section 2251(a) is strikingly similar to the Commerce Clause challenge at issue in *Raich.* First, the statutes at issue in this case and in *Raich* are both comprehensive regulatory schemes seeking to eliminate the production, distribution, and possession of "fungible commodit[ies] for which there is an established, albeit illegal, interstate market." *See Maxwell*, 446 F.3d at 1217. Second, producing child pornography, like growing marijuana, is an economic activity. *See Angle*, 234 F.3d at 338 (holding that possession of child pornography "was an essential part of a larger regulation of economic activity . . . that arise[s] out of or [is] connected with a commercial transaction..."); *cf. Raich*, 125 S. Ct. at 2211 (defining economic activities as "the production, distribution, and consumption of commodities"); *see also Forrest*, 429 F.3d at 78 (production and possession of pornography is "quintessential economic activity"); *Grimmett*, 439 F.3d at 1272 ("Section 2251 is directed at an activity that is economic in nature."); *Maxwell*, 446 F.3d at 1217 (child pornography market is "quintessentially economic"); *United States v. Sullivan*, 451 F.3d 884, 890-891 (D.C. Cir. 2006) ("the trade in child pornography is 'quintessentially economic'"). Finally, as is true of marijuana, Congress has found that there is a "market" for child pornography:

> The existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials; the sexualization and eroticization of minors through any form of child pornographic images . . . encourag[es] a societal perception of children as sexual objects and lead[s] to further sexual abuse and exploitation of them; and . . . prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate ***the market*** for the sexual exploitative use

9

of children . . . .

*Maxwell*, 446 F.3d at 1217 (citing Pub. L. No. 104-208, § 121, 110 Stat. at 3009-27) (emphasis added); *see also id*. (Congress has also noted that "child pornography . . . has become [a] highly organized, multimillion dollar industry that operate[s] on a nationwide scale.") (citing S. Rep. No. 95-438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 42, 1977 WL 9660.)).

Applying *Raich* to this case reaffirms the Seventh Circuit's outcome in *Angle*. Because Section 2251(a) bears a substantial relation to interstate commerce, the "*de minimis* character" of Pearson's local activities are "of no consequence." *See Raich*, 125 S. Ct. at 2206. The Court need only determine whether Congress could rationally conclude that the cumulative effect of child pornographers' activities would substantially affect the interstate commerce Congress is seeking to eliminate. *See Maxwell*, 446 F.3d at 1218. As the Eleventh Circuit noted:

> Viewed in this light, there is nothing irrational about Congress's conclusion, supported by its findings, that pornography begets pornography, regardless of its origin. Nor is it irrational for Congress to conclude that its inability to regulate the intrastate incidence of child pornography would undermine its broader regulatory scheme designed to eliminate the market in its entirety, or that the enforcement difficulties that attend distinguishing between [purely intrastate and interstate child pornography], would frustrate Congress's interest in completely eliminating the interstate market.

*Id.* (internal quotations and citations omitted); *see also Forrest*, 429 F.3d at 78; *Grimmett*, 439 F.3d at 1273. It is well within Congress's authority to regulate the commercial activities constituting the interstate market for child pornography, and prohibiting the intrastate production of an article of commerce is a rational means of regulating commerce in that product. *See Raich*, 125 S. Ct. at 2211.

**CONCLUSION**

For the reasons stated above, the Court respectfully denies Defendant's Motion to

Dismiss.

Dated: January 24, 2008                    ENTERED:

                                                                                  _____
                                                                                  AMY J. ST. EVE
                                                                                  United States District Court Judge